**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES E. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14-cv-03908 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| UNION PACIFIC RAILROAD COMPANY | ) | |
| and CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff James Jones brought this lawsuit against Defendants Union Pacific Railroad Company ("Union Pacific") and CSX Transportation, Inc. ("CSX") alleging that both were negligent when their trains collided, injuring Jones, who was working as a conductor on the Union Pacific train at the time. During discovery, Jones noticed the deposition of each Defendant pursuant to Federal Rule of Civil Procedure 30(b)(6). Now both Defendants have filed motions seeking protective orders that would limit or strike various categories of inquiry from the deposition notices. (Dkt. Nos. 26, 28.) For the reasons set forth below, the motions are denied with the exception that certain deposition topics are to be limited as set forth below.

## BACKGROUND

Jones alleges that on April 11, 2013 he was employed as a conductor with Union Pacific when the train on which he was working collided with a CSX train. (Compl. ¶ 1, Dkt. No. 1.) The collision caused Jones to be thrown about the cab of his locomotive, resulting in severe injuries to his right knee, right arm, back, and spine. (*Id.* ¶¶ 1, 13.) According to Jones, the accident and his injuries were caused by Union Pacific's negligence, including:

- Union Pacific's failure to provide him with a reasonably safe place, conditions, or methods to work;

- its failure to provide him with adequate equipment to perform his job and to maintain properly the equipment it did assign to Jones and his crew;

- its failure to give proper dispatching instructions and warnings;

- its failure to maintain properly its signal circuits in violation of federal regulations;

- its failure to maintain its electric lock for hand operated switches in violation of federal regulations;

- its failure to provide Jones with a locomotive in proper condition and safe to operate; and

- its failure to provide equipment, including track circuits, as required by the Safety Appliance Act, 49 U.S.C. § 20301 *et seq.*

(*Id*. ¶ 13.) Jones further alleges that after reporting his injury and the unsafe work conditions that caused it, he was investigated, disciplined, and terminated by Union Pacific in violation of the whistleblower provisions of the Federal Rail Safety Act, 49 U.S.C. § 20109 *et seq.* (*Id.* ¶¶ 1, 14-22.)

With respect to CSX, Jones asserts a claim for negligence alleging that:

- CSX's train violated signals and dispatcher instructions and occupied Jones's right of way;

- it failed to issue proper instructions to its train crew to prevent them from proceeding into the area when Jones's train had the right of way;

- it failed to take reasonable steps to ensure its employees obeyed signals and instructions;

- it provided improper dispatch instructions and failed to warn Jones of the occupied track;

- it failed to properly hire, train, retain, and supervise its employees, including its dispatcher, to safely operate its equipment;

- it failed to maintain properly its signal circuits in violation of federal regulations;

- it failed to properly maintain its electric lock for hand operated switches in violation of federal regulations;

- it failed to provide its crews with locomotives in proper condition and safe to operate in violation of the Locomotive Inspection Act, 49 U.S.C.A. § 20701; and

- it failed to provide equipment, including track circuits, as required by the Safety Appliance Act.

(*Id.* ¶ 25.)

Jones has served Union Pacific and CSX with deposition notices pursuant to Rule 30(b)(6). The CSX Rule 30(b)(6) notice lists 12 deposition topics (20, including subparts) (*see* CSX Mot. at Ex. B, Dkt. No. 28-2), while the Union Pacific Rule 30(b)(6) notice identifies 17 topics (25, including subparts) (*see* Union Pacific Mot. at Ex. B, Dkt. No. 26-2.) After being served with their respective Rule 30(b)(6) notices, Defendants met and conferred with Jones in an attempt to narrow the scope of the questioning that would take place. The parties' efforts to resolve their differences failed, however, which led to the instant motions for protective orders.

## DISCUSSION

### I. Legal Standard

Rule 30(b)(6) allows litigants to name a business entity as a deponent. It states in relevant part:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation . . . and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6). "For a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity, and the corporation must designate and adequately prepare witnesses to address these matters." *Canal Barge Co. v.*

*Commonwealth Edison Co.*, No. 98 C 0509, 2001 WL 817853, at *1 (N.D. Ill. July 19, 2001) (internal quotation omitted).

A party's ability to examine a corporate deponent pursuant to Rule 30(b)(6) is not without limits. Federal Rule of Civil Procedure 26(c)(1) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). Rule 26(b)(2)(C) further requires a court to limit the frequency or extent of discovery otherwise allowed if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). The burden is on the party seeking a protective order to demonstrate that good cause exists for entry of the order by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## II.        Rule 30(b)(6) Notices to Union Pacific and CSX

Both Defendants object to virtually every one of Jones's deposition topics as, among other things, vague, overbroad, and calling for irrelevant information. In general, Defendants' concerns regarding vagueness and overbreadth are unconvincing. Rule 30(b)(6) only requires a deposition notice to "designate the areas of inquiry with reasonable particularity." Fed. R. Civ. P. 30(b)(6). While it is true many of Jones's deposition topics, if read broadly, could call for irrelevant testimony, that would describe most Rule 30(b)(6) notices. Absent reason to believe that Jones will abuse the rule, this Court assumes a reasonable reading of the topics. As another court has noted, "[c]ounsel have every motivation to act efficiently; their clients, after all, are paying for their time, and counsel have many professional obligations. Moreover, the clock is ticking against the seven-hour limit in Rule 30(d)[(1)], and every moment wasted on a useless question is lost and cannot be used to ask a meaningful question." *Tri–State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 126 (D.D.C. 2005). With this in mind, the Court addresses each of Defendants' objections in turn.

### A.        Union Pacific Topic 1 and CSX Topic 1: Facts and Circumstances Surrounding the April 11, 2013 Train Collision

Jones requests identical information in Topic 1 of both Rule 30(b)(6) notices:

The facts and circumstances surrounding the April 11, 2013, train collision and James Jones' injury event, including the conditions of work, equipment and track, and:

(a) work assignment(s) given to Plaintiff and his crew on that date;

(b) post-incident inspections of the equipment and scene involved;

(c) all reports prepared by Defendant as a result of the subject collision;

(d) damage, repair and inspection records regarding the equipment involved;

(e) photographs, motion pictures, drawings, blueprints and/or reproductions of the scene of the incident or equipment/tools;

(f) investigation, charges, hearing, findings, discipline, termination and revocation undertaken by Defendant against Plaintiff and his crew as a result of the train collision and Defendant's assessment of responsibility for the subject incident and damages;

(g) instructions given to Plaintiff and his co-workers and any meetings held prior to the subject incident; and,

(h) notices, trainmaster or superintendent notices or other tangible items which identified safety hazards, complaints or communicated any warning to Plaintiff regarding the work he was assigned to on the day of the subject incident.

Union Pacific contends that this topic is overbroad and vague. It first suggests that the request is impermissible because it "includes (and therefore [is] not limited to) eight specified subtopics." (Union Pacific Mot. at 6, Dkt. No. 26.) According to Union Pacific, this number of subtopics is necessarily overbroad and ambiguous, and fails to "identify the outer limits of inquiry noticed." (*Id.*) Contrary to Union Pacific's suggestion, however, Topic 1 clearly sets the outer limits of inquiry: the events on April 11, 2013 that are at issue. Furthermore, Union Pacific's objections to particular subparts within this topic on the basis that they "contain[] no temporal limitation" and are not "appropriately limited to the incident in question" are not well-taken. The initial portion of the request specifically limits the subparts to the facts and circumstances surrounding the April 11, 2013 train collision. Thus, the Court rejects Union Pacific's arguments and denies its motion with respect to Topic 1.

CSX makes identical arguments to those asserted by Union Pacific regarding the purportedly overbroad nature of Topic 1 in its Rule 30(b)(6) notice; for the reasons stated above, the Court rejects those arguments. CSX goes on to argue that because it was not Jones's employer and did not provide Jones with equipment, many of the subparts in Topic 1 are

irrelevant. The Court agrees to an extent. Clearly CSX would not be expected to have much information concerning, for example, the work assignments given to Jones on the date in question. Assuming that CSX does not have information specified in certain subparts of Topic 1, however, it should not be particularly burdensome for CSX to prepare a Rule 30(b)(6) designee to testify to that fact. Moreover, it is conceivable that CSX may have obtained responsive information from Union Pacific or through its own investigation. Because there is a possibility that questioning CSX on these subparts would lead to relevant information, the Court denies CSX's motion with respect to Topic 1. *See Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004) (discovery requests are relevant if there is any possibility that they could yield relevant information).

### B.     Union Pacific Topic 2: Operating Rules

Topic 2 of the Union Pacific deposition notice[1] reads as follows:

> Defendant's operating rules, policies, procedures, and safety rules applicable to Plaintiff and his crew on April 11, 2013, and at the time of the subject train collision.

Union Pacific complains that this topic is overbroad in that, as worded, it covers each and every one of Union Pacific's rules, policies, and procedures that applied to Jones, regardless of their relevance to this case. Union Pacific may be correct that, in theory, this request could call for information on a host of irrelevant rules and procedures. Nonetheless, it is sufficiently definite to stand. The Court expects that Jones's counsel will limit the questioning to matters related to the claims in this case. Thus, Union Pacific's motion is denied as to Topic 2.

### C.     Union Pacific Topic 3 and CSX Topic 3: Operating Rules for Dispatchers

Topic 3 of the Union Pacific and CSX deposition notices asks for testimony regarding:

---

[1] Jones has agreed to withdraw the corresponding topic in CSX's Rule 30(b)(6) notice. Accordingly, CSX's motion regarding Topic 2 is denied as moot.

Defendant's operating rules, policies, practices, procedures, and safety rules applicable to Union Pacific dispatchers and CSX dispatchers regarding work performed at the Ogden Junction and/or in connection with the work performed by Plaintiff's crew on April 11, 2013, and at the time of the subject train collision.

Defendants argue that this topic is overbroad because, as written, it would require someone from each Defendant to address each and every rule, policy, and procedure employed by Defendants that applied to their dispatchers, regardless of their relevance to this case. Again, as with Topic 2, the Court acknowledges that this topic could be construed to encompass irrelevant information. Nonetheless, Topic 3 has been stated with sufficient particularity to satisfy Rule 30(b)(6)'s requirements, as it is limited to the location and time period of the train collision. Accordingly, the Court denies CSX's and Union Pacific's motions with respect to Topic 3, with the expectation that Jones's counsel will limit questioning to matters related to the claims and defenses in this case.

### D. Union Pacific Topic 4 and CSX Topic 4: Equipment Data

Topic 4 of Union Pacific's Rule 30(b)(6) notice asks for testimony regarding:

The locomotive and train operated by Plaintiff's crew on April 11, 2013, including all data available regarding the same from that date, downloads, video, train consist, work/job orders, instructions, inspections, and maintenance.

Union Pacific first argues that this topic is "overbroad and irrelevant" because Jones has testified "that he inspected the locomotive and there was nothing wrong with it." (Union Pacific Mot. at 9, Dkt. No. 26.) As an initial matter, Union Pacific has not provided the relevant portion of Jones's deposition transcript so that the Court may assess whether he actually made the admission as plainly as Union Pacific claims. But even if Jones testified as Union Pacific describes, such testimony would not foreclose discovery regarding the topic of the Union Pacific locomotive's fitness for operation on the date in question. The allegations of the complaint clearly put at issue whether the locomotive in question was faulty, and the fact that Jones

testified that he did not observe anything wrong with the locomotive does not foreclose the possibility that Union Pacific has contrary evidence. Moreover, Union Pacific fails to make any showing that preparing a Rule 30(b)(6) deponent on this topic would be unduly burdensome. Accordingly, Union Pacific has failed to meet its burden of showing that the topic is improper. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (the "burden rests upon the objecting party to show why a particular discovery request is improper.") (citation omitted).

As a compromise, Union Pacific offers to designate a deponent to testify "regarding the locomotive downloads that show how the equipment involved was operated at the time of collision and the Track Image Recorder video from the collision." (Union Pacific Mot. at 9-10, Dkt. No. 26.) But Union Pacific fails to convince the Court that the proffered testimony would satisfy Topic 4's legitimate purposes. Accordingly, the Court denies Union Pacific's motion with respect to this topic.

CSX's Topic 4 is worded similarly to that directed to Union Pacific:

> All CSXT locomotives, trains, equipment, track and/or track structures at Ogden Junction and/or involved in the train collision on April 11, 2013, including all data available regarding same from that date, downloads, videos, train consist, work/job orders, instructions, inspections, and maintenance.

Jones has agreed to limit this request to the CSX track involved in the incident. Yet CSX still objects, arguing that the collision occurred on Union Pacific track and thus the request is not reasonably calculated to lead to the discovery of admissible evidence. The Court disagrees. In his complaint, Jones alleges that CSX failed "to ensure safe movement on its rails." (Compl. ¶ 27, Dkt. No. 1.) Because Jones's allegations place CSX's track at issue, discovery aimed at exploring CSX's track structures on April 11, 2013 is relevant. Accordingly, the Court denies CSX's motion with respect to Topic 4 as narrowed by Jones.

### E.      Union Pacific Topic 5 and CSX Topic 5: Track Information

Topic 5 of Union Pacific's Rule 30(b)(6) notice reads:

> All general track bulletins, time tables, notices and train orders on April 11, 2013, related to train handling through the Ogden Junction and throughout the area worked by Plaintiff's crew.

Union Pacific first argues that Topic 5 should be disallowed because it is duplicative of Topic 1(h), which asks for "notices, trainmaster or superintendent notices or other tangible items which identified safety hazards [or] complaints." The Court is unpersuaded. Although there may be some overlap in the information called for by the two requests, they are sufficiently distinct such that both may stand. Union Pacific next contends that this topic is overbroad and vague because "[t]he issue in this case is whether Plaintiff complied with the requirements of operating the train at restricted speed in the Ogden Junction," and states that it is "willing to put forward a designee to discuss specific instructions that Plaintiff received and that are relevant to this case – the 'SI-14 for the Rockwell Subdivision.'" (Union Pacific Mot. at 10, Dkt. No. 26.) But Union Pacific's characterization of the issues in this case is much narrower than the allegations in the Complaint. The Court finds no basis to truncate the scope of this dispute as Union Pacific proposes. Accordingly, the Court denies Union Pacific's motion with respect to Topic 5.

Jones requests similar testimony in Topic 5 of CSX's Rule 30(b)(6) notice:

> All general track bulletins, correspondence, dispatch communications, time tables, notices, and train orders on April 11, 2013, related to train handling through the Ogden Junction and throughout the area worked by Plaintiff's crew.

CSX objects that this topic is irrelevant because CSX's rules did not govern Jones, who worked as a Union Pacific employee operating a locomotive on Union Pacific track. Like Union Pacific, CSX seeks to redefine the scope of this litigation to its own benefit. Jones's complaint contains specific allegations regarding CSX's failure to ensure safe movement on CSX's rails.

Furthermore, Jones alleges that the negligence of CSX and its employees caused its train to collide with the Union Pacific train.[2] There is no basis to limit discovery as CSX proposes. Accordingly, the Court denies CSX's motion with respect to Topic 5.

### F.      Union Pacific Topic 6: Train Maintenance

Union Pacific Topic 6 asks for testimony regarding:

Maintenance, inspection, repair, safety audit and work history records regarding the locomotives operated by Plaintiff's crew on the subject train at the time of the April 11, 2013, train collision.

According to Union Pacific, this request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence because Jones has testified "that the locomotive was in good working order on the date of this incident and that the state of the locomotive played no role in the incident." (Union Pacific Mot. at 10, Dkt. No. 26.) However, the complaint alleges that Union Pacific "failed to provide Plaintiff with a locomotive in proper condition and safe to operate" (Compl. ¶ 12(J), Dkt. No. 1), and Union Pacific has not provided the referenced portion of Jones's deposition transcript so that the Court may determine whether Jones actually made an admission that would take this allegation out of dispute. Moreover, as noted with respect to the similar Topic 4, the mere fact that Jones did not discern any problem with the locomotive himself does not make the locomotive's condition as a whole irrelevant. If Jones has made a judicial admission with respect to the condition of the locomotive, contrary evidence may be excluded at the summary judgment or trial stage. But Plaintiff will be permitted to explore the topic during discovery. Thus, the Court denies Union Pacific's motion with respect to Topic 6.

---

[2] Defendants contend that "[a]t the time of the collision, Plaintiff's train was on Union Pacific track and it collided with the hind end of another Union Pacific train." (Union Pacific Mot. at 1, Dkt. No. 26.) This is contradictory to the allegation in the Complaint that he was operating a Union Pacific train that collided with a CSX train. (Compl. ¶ 1, Dkt. No. 1.)

### G. Union Pacific Topic 7 and CSX Topic 6: Track Maintenance

Union Pacific Topic 7 and CSX Topic 6 seek testimony regarding:

> Maintenance, inspection, repair, safety and work history records regarding the track, track structures, and track signals, at the Ogden Junction and/or in the area involved in the April 11, 2013, train collision, including but not limited to internal inspections, defect reports, FRA inspections, and all related reports.

Union Pacific argues that, "[a]s worded, this request is overly broad and impossible to respond to by deposition" because it calls for Union Pacific "to prepare a witness to testify as to the entire track's maintenance and repair history." (Union Pacific Mot. at 11, Dkt. No. 26.) As the track was laid more than 75 years prior to the accident (*see id.*), the Court agrees that topic is overbroad as written and warrants some limitation. The Court observes from the parties' correspondence attached to Union Pacific's motion that Jones has previously agreed to limit this topic "to the same temporal scope as the written discovery requests" on that issue. (*Id.* at Ex. D, Dkt. No. 26-4.)  It is reasonable to keep the scope of deposition testimony consistent with the scope of the written and document discovery. Accordingly, the Court orders that questioning regarding Topic 7 will be limited to the time frame Jones offered as a compromise.

CSX raises several additional arguments to support its claim that this topic is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. First, it contends that only a single switch on Union Pacific's track is at issue, not the entire Ogden Junction. But the Complaint not only implicates a Union Pacific switch, it also puts at issue CSX's switches, track circuits, and signals. (Compl. at ¶¶ 25 (F)-(H), Dkt. No. 1.) Because CSX offers no support for its characterization of the case as limited to a single switch, it has not met its burden of showing that Topic 6 is improper. CSX next argues that Topic 6 is irrelevant because the "collision occurred on Union Pacific track so any inspection of CSX track is unrelated to this incident." As pointed out above, however, Jones makes specific allegations regarding CSX's

failure to ensure safe movement on its rails, and again CSX fails to explain why the Court should accept its version of the accident over Jones's to set the proper scope of discovery. (*Id.* ¶ 27.) Finally, CSX argues that it already has certified through discovery that it did not prepare any reports as a result of this incident and thus "it would be nothing other than harassment to require CSX to prepare a designee to testify to the non-existence of documents." (CSX Mot. at 8, Dkt. No. 28.) Again, the Court disagrees; if CSX did not prepare any reports as a result of the collision at issue in this case, its designee can simply testify to that fact at the deposition. Because Jones's counsel offered to narrow the subject matter of CSX Topic 6 to the temporal scope as the written discovery requests on these same issues, however, the Court will limit questioning on CSX Topic 6 to this temporal scope as well.

### H. Union Pacific Topic 8 and CSX Topic 7: Track Maintenance

Union Pacific Topic 8 and CSX Topic 7 ask for corporate designees to testify regarding:

> Training, instruction and guidance provided by Defendant to its trainmen and/or dispatchers with respect to train handling and/or dispatching and specific rules and procedures applicable to train handling and/or dispatching in the Ogden Junction and throughout the areas worked by Plaintiff's crew on April 11, 2013.

Union Pacific and CSX both argue that this request is duplicative of Topics 1 through 3 and thus objectionable for the same reasons. Although there is some overlap, however, the plain language of Topics 1 through 3 calls for information distinct from the "[t]raining, instruction, and guidance" requested by the other topics. CSX also argues that this topic as directed to it is not reasonably calculated to lead to the discovery of admissible evidence because "no CSX trainmen were involved in this incident." (CSX Mot. at 8, Dkt. No. 28.) However, CSX offers no support for this contention and, according to the allegations of the Complaint, Jones seeks to hold CSX liable for its failure to "properly hire, train, retain, and supervise its employees, including its dispatcher, to safely operate its equipment." (Compl. ¶ 25(E), Dkt. No. 1.)

Accordingly, CSX has not met its burden of demonstrating that Topic 7 is improper. Both Union Pacific's and CSX's motions are denied for these topics.

## I. Union Pacific Topic 9 and CSX Topic 8: Reports and Complaints

Union Pacific Topic 9 and CSX Topic 8 are identical:

> All reports, complaints, and/or warnings to Union Pacific of train collision, safety concern/hazard, and/or personal injury allegedly associated with the track conditions at Ogden Junction, lack of warnings at Ogden Junction, and/or dispatching instructions at Ogden Junction, including but not limited to hotline reports, personal injury reports, claims, lawsuits, and/or personal injury database records.

Union Pacific objects that it already has produced the single complaint in its possession and has certified in its responses to discovery that there have been no other personal injuries or lawsuits relating to the issues in this case. Union Pacific further objects that it "has a process in place for reporting unsafe conditions, the Safety Hotline, and it has produced the only complaint that Union Pacific is aware of." If that is the case, the Court sees no prejudice in having a corporate representative testify regarding that one complaint. Accordingly, the Court denies Union Pacific's motion with respect to Topic 9.

CSX similarly objects that it already has certified that it does not possess any complaints related to the location of the collision. Again, the Court fails to discern any prejudice or undue burden in designating a corporate representative to testify to this fact. CSX additionally seeks to prevent Jones from deposing it on this topic because the "collision that is the subject of Plaintiff's Complaint is not CSX property," and thus Topic 9 is not reasonably calculated to lead to the discovery of admissible evidence. (CSX Mot. at 9, Dkt. No. 28.) As discussed above, however, the Complaint alleges that a CSX train collided with Jones's train (Compl. ¶ 1, Dkt. No. 1). Accordingly, the Court denies CSX's motion with respect to Topic 8.

**J.      Union Pacific Topic 10: Jones's Employee Records**

Union Pacific Topic 10 asks for Rule 30(b)(6) testimony concerning:

James Jones's employment with Union Pacific, including wage and earning
history, medical files, fitness-for-duty, personnel files, disciplinary files, and work
history.

Union Pacific argues that this topic "is overbroad and vague" and claims that it "would

have to prepare a witness to testify about ***everything*** that ever happened to Plaintiff during his

career with Union Pacific," including clearly irrelevant matters. (Union Pacific Mot. at 12, Dkt.

No. 26 (emphasis in original).) As with several other deposition topics, the Court agrees that this

topic, broadly construed, could include irrelevant information. However, Jones asserts claims

that Union Pacific took unlawful and adverse employment actions against him after the collision

at issue, which led to a loss of wages, benefits, and earnings capacity. (Compl. ¶¶ 14-19, Dkt.

No. 1.) Furthermore, in its affirmative defenses, Union Pacific asserted that it had a "non-

discriminatory and non-retaliatory basis" for disciplining Jones after the collision. (Ans. at 11,

Dkt. No. 9.) Because Jones's general employment history has been put at issue for both the

claims and defenses in this matter, Jones will be given latitude to question Union Pacific on his

employment history. Accordingly, the Court denies Union Pacific's motion with respect to Topic

10.

**K.      Union Pacific Topic 11: Union Pacific Wages**

Union Pacific Topic 11 asks for a corporate designee to testify concerning:

Wages, benefits, and earning capacity available to trainmen in James Jones's
geographical work area since April 2010, including a seniority roster of earnings
and benefits through present.

Union Pacific states that it is willing to provide a designee to testify about Jones's wages,

earnings, and benefits in the three years immediately preceding the incident in question, but

argues that earnings of other employees are irrelevant to this case "as each employee is different." (Union Pacific Mot. at 12, Dkt. No. 26.) Despite Union Pacific's protestations to the contrary, however, information regarding other employees is relevant. Jones claims that he lost wages and benefits as a result of Union Pacific's disciplinary policies and his eventual termination. Wage and benefit information for other trainmen could show whether Jones was treated differently as a result of complaining about the alleged unsafe working condition and his resulting injury. It may also help to determine the measure of any losses that Jones suffered as a result. Accordingly, Union Pacific's motion is denied with respect to Topic 11.

### L. Union Pacific Topic 12: Conductor and Engineer Job Duties

Union Pacific Topic 12 requests testimony concerning:

> The job duties, physical requirements, and job descriptions for Union Pacific conductor and engineer.

The parties have agreed that Union Pacific will provide a designee to testify on this topic regarding the Chicago Service Unit. Thus, Union Pacific's motion is denied as moot.

### M. Union Pacific Topic 13: Post-Collision Safety Enhancements

Union Pacific Topic 13 asks for testimony concerning:

> All actions taken by Defendant since April 11, 2013, to prevent future similar train collisions and/or injuries.

Union Pacific objects to the admissibility of testimony on this issue. But admissibility is not a prerequisite for information to be discoverable. *See* Fed. R. Civ. P. 26(b)(1). And while it is true that evidence of subsequent remedial measures is generally inadmissible to prove liability, it may be admissible for other purposes. *See* Fed. R. Evid. 407 (providing examples of permitted uses of evidence of subsequent remedial measures, including proving ownership, control, or the feasibility of precautionary measures). Union Pacific further argues that the topic is vague and

offers to "produce a witness to testify regarding any changes made to the specific switch in question at the location of the collision." (Union Pacific Mot. at 13, Dkt. No. 26.) Contrary to Union Pacific's suggestion, however, the topic is reasonably particular; it limits testimony to safety enhancements pertinent to train collisions of the sort that occurred on April 11, 2013. Furthermore, Union Pacific's proposed limitation of this topic ignores the fact that the Complaint does not limit its claims to the functioning of the switch, but also includes allegations relating to other faulty equipment and practices that, according to Jones, led to the collision. Accordingly, the Court denies Union Pacific's motion with respect to Topic 13.

**N.**   **Union Pacific Topic 14 and CSX Topic 10: Communications Between Union Pacific and CSX**

Union Pacific Topic 14 and CSX Topic 10 both ask for testimony regarding:

> All communications between Union Pacific and CSX on April 11, 2013, through the present regarding dispatch of Plaintiff's train on that date, the train collision at issue, responsibility for the train collision at issue, discipline of any employee as a result of the train collision, and/or policies/practices/procedures for safe dispatch in the Ogden Junction.

Both Defendants object to this topic to the extent it seeks information covered by the attorney-client privilege or the work product protection doctrine. The Court declines to read this request as simply an attempt to pierce Defendants' privileges, however. There may very well be non-privileged information responsive to this topic. And should questioning move into matters protected by the attorney-client privilege or the work product protection doctrine, Defendants' counsel may object and even instruct the witness not to answer. Furthermore, the Court finds meritless Defendants' argument that "this topic is essentially a document request, and runs afoul of the rule that 30(b)(6) deposition notices that essentially request an explanation of documents are objectionable." (Union Pacific Mot. at 13, Dkt. No. 26; CSX Mot. at 9, Dkt. No. 28.) Nothing in Rule 30(b)(6) or the relevant case law prevents a party from asking questions about

documents.[3] Accordingly, while the Court cautions Plaintiff to be respectful of the privilege issues implicated by such questioning, Defendants' motions are denied with respect to Union Pacific Topic 14 and CSX Topic 10.

### O.     Union Pacific Topic 15 and CSX Topic 11: Disciplinary Matters

Union Pacific Topic 15 asks for testimony regarding:

> The facts and circumstances surrounding James Jones's post-April 11, 2013 discipline, investigation, charges, hearing, punishment, termination, and certification revocation, and bases therefore.

In challenging this topic, Union Pacific first argues that it is duplicative of Topic 1(f). While there does appear to be significant overlap between the two deposition topics, it is difficult to see how this fact prejudices Union Pacific. Since the two topics will call for much of the same information, the redundancies should streamline the preparation of a corporate designee to testify on those topics. Union Pacific also argues that this topic "improperly demands Union Pacific to produce a witness who can explain its entire defense to Count II of Plaintiff's Complaint." (Union Pac. Mot. at 13, Dkt. No. 26.) But the Court understands this request merely to call for a Rule 30(b)(6) designee to testify about the facts known to Union Pacific regarding disciplinary proceedings against Jones. As such, this is a reasonable deposition topic. Accordingly, the Court denies Union Pacific's motion with respect to Topic 15.

CSX Topic 11 asks for similar information:

> Defendant's knowledge of and/or involvement in the facts and circumstances surrounding James Jones's post April 11, 2013, discipline, investigation, charges,

---

[3] Both Defendants cite *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237 (S.D.N.Y. 2002) for the proposition that "30(b)(6) deposition notices that essentially request an explanation of documents are objectionable." (Union Pacific Mot. at 13, Dkt. No. 26; CSX Mot. at 9, Dkt. No. 28.) However, *Innomed* does not support such a broad statement of law. That case stated, in *dicta*, that a Rule 30(b)(6) notice seeking to depose a designee to "explain the contents" of the 12 different documents did not describe the matters on which examination was requested with "reasonable particularity." *Innomed Labs*, 211 F.R.D. at 240. In contrast, here, Union Pacific Topic 14 and CSX Topic 10 describes the contemplated questioning with sufficient specificity to meet Rule 30(b)(6)'s "reasonable particularity" requirement.

hearing, punishment, termination, and certification revocation, and bases
therefore.

CSX first argues, as did Union Pacific, that this topic is duplicative of Topic 1(f). That argument is rejected for the same reason as stated above. CSX next contends that the topic is not appropriately posed to CSX because CSX did not employ Jones and the record indicates CSX was not involved in the discipline and termination of Jones. If the record is indeed as CSX represents, the Court discerns no prejudice to CSX providing a designee to testify that it had no role or knowledge in Jones's disciplinary proceedings or termination. On the other hand, if CSX did have some involvement in Union Pacific's investigation or discipline of Jones as a result of the April 11, 2013 incident, the nature and extent of that involvement would potentially be relevant to several issues in this case. Accordingly, the Court denies CSX's motion with respect to Topic 11.

## P.     Union Pacific Topic 16 and CSX Topic 12: Anti-Retaliation

Union Pacific Topic 16 asks for testimony regarding:

Defendant's practices, policies, procedures and rules regarding anti-retaliation,
internal on-duty reporting, FRA on-duty injury reporting, safety awards,
evaluation of employee job performance in relation to on-duty injuries, and its
Internal Control Plan.

Union Pacific objects to this request as overbroad; according to Union Pacific, Topic 16 would require it not only to prepare a corporate designee to testify regarding FRSA retaliation, but also retaliation for other reasons, including against employees who complain about race or gender discrimination. The Court agrees that the topic as written is overbroad, and thus limits questioning on Union Pacific Topic 16 to matters relating to the FRSA. Union Pacific also complains that the topic contains no temporal or geographic limitations. Again the Court agrees and limits Union Pacific Topic 16 to questions about Union Pacific's FRSA practices, policies,

procedures, and rules as applied in the Chicago Service Unit for the time period since April 2010.

CSX Topic 12 asks for similar information; however, Jones has agreed to withdraw this request. Accordingly, CSX's motion is denied as moot with respect to this topic.

### Q. Union Pacific Topic 17: Whistleblower Claims

Union Pacific Topic 17 calls for a corporate designee to testify regarding:

> Whistleblower claims, lawsuits, and judgments against Union Pacific since 2008 alleging retaliation for reporting an on-duty injury and/or unsafe condition at work.

Union Pacific objects to this request as overbroad and unduly burdensome. However, at the motion hearing the parties agreed to a compromise pursuant to which Union Pacific would provide a corporate designee to testify regarding whistleblower claims in the Chicago Service Unit. The Court will hold the parties to this agreement and thus grants Union Pacific's motion to the extent it seeks to limit questioning on this topic to the Chicago Service Unit.

### CONCLUSION

The Court denies CSX's motion with the exceptions that Jones's questioning about CSX Topic 4 shall be limited to the CSX track involved in the incident and CSX Topic 6 shall be limited to the temporal scope described in written discovery requests relating to that topic. The Court also denies Union Pacific's motion with the following exceptions. Jones's questioning on Union Pacific Topic 7 shall be limited to the temporal scope described in written discovery requests relating to that topic; Union Pacific Topic 16 shall be limited to matters relating to Union Pacific's FRSA practices, policies, procedures, and rules as applied in the Chicago Service Unit for the period since April 2010; and questioning on Union Pacific Topic 17 shall be limited to whistleblower claims in the Chicago Service Unit.

ENTERED:

Dated:  July 27, 2015

_____
Andrea R. Wood
United States District Judge